UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————X

JENNA PALEY,

        Plaintiff,

    -against-

BELLUM AI, LLC and JUSTWORKS EMPLOYMENT
GROUP LLC,

        Defendants.

———————————————————————X

1:25-cv-02783

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/5/2025

## MEMORANDUM DECISION AND ORDER
## GRANTING DEFENDANTS' MOTIONS TO DISMISS

McMahon, J.:

Plaintiff Jenna Paley sues her former employers Bellum AI LLC ("Bellum") and Justworks Employment Group LLC ("Justworks") (together, "Defendants") for employment discrimination based on her sex and gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq, and the Colorado Anti-Discrimination Act ("CADA"). Specifically, Plaintiff asserts five causes of action: (i) sex discrimination and unlawful discharge pursuant to Title VII; (ii) retaliation pursuant to Title VII; (iii) unlawful discharge pursuant to CADA; (iv) harassment pursuant to CADA; and (v) retaliation pursuant to CADA. Plaintiff seeks an award of compensatory damages, punitive damages, liquidated damages, and attorneys' fees. Plaintiff filed her original Complaint on April 3, 2025, and filed an Amended Complaint on July 10, 2025.

Bellum moves to dismiss Plaintiff's CADA claims for lack of subject matter jurisdiction. Justworks moves to dismiss Plaintiff's entire action on the ground, inter alia, that it was not

1

Plaintiff's employer and cannot be sued as such; Justworks also argues that Paley failed to exhaust her administrative remedies on her federal as well as her state law claims.

The motions are GRANTED. The case is dismissed in its entirety as to Justworks and will proceed against Bellum only on the federal claims.

## BACKGROUND

### I.    Parties

Plaintiff Jenna Paley is a female who resides in Colorado. Compl. ¶¶ 8, 13.[1]

Defendant Bellum is a Delaware limited liability company, with its principal place of business in New York City. *Id.* ¶ 9. Bellum's web site indicates that the company provides "operational support services that cross borders and cultures," whatever that means. Bellum Home Page, https://www.bellum.ai (last visited Dec. 1, 2025).[2] The complaint alleges that Bellum is a subsidiary or an affiliate of AMF Bellum Holdings, LLC and AMF Bowling Centers, Inc. (collectively, "Bowlero Corp."), Compl. ¶10, which, per Plaintiff's EEOC charge, is headquartered in Wilmington, Delaware. Dkt. 60-1, Ex. 1.[3] Neither Bowlero entity is a named defendant in this case.

Defendant Justworks is a foreign limited liability company with its principal place of business in New York City. *Id.* ¶ 12. Justworks provides human resources support to businesses,

---

[1] Compl. at all times refers to Plaintiff's Amended Complaint.

[2] Plaintiff did not allege in her Amended Complaint what line of business Bellum was in during the relevant period.

[3] Although not attached to the Complaint, the EEOC charge is referenced and deemed "integral" to the complaint because of its reliance on its terms and effects. Paley had notice of this document – given she had signed it on March 28, 2023 – and thus it can be considered on a motion to dismiss. *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). As will be seen later it can also be considered on the motion to dismiss the claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); when such a motion is being decided the court is free to consider evidence extrinsic to the complaint that is relevant to ascertaining its jurisdiction. *Harty v. West Point Realty*, 28 F.4th 435, 441 (2d Cir. 2022); *Cortlandt St. Recovery Corp v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015); *Marakova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

offering assistance with hiring, benefits, and compliance. Justworks Home Page, https://www.justworks.com (last visited Dec. 1, 2025).[4]

## II. Factual Background

### A. Paley's Hiring and the Employment Structure

On or about December 17, 2021, Plaintiff entered a contract of employment with Bowlero Corp., which represented that Plaintiff would be an employee of Bowlero Corp. but would be working at Bellum. Compl. ¶ 28. This document does not mention Justworks.

Previously, on November 21, 2021 – shortly before she began work at Bellum – Paley signed a form acknowledging that Justworks had a contract to provide Bellum with certain human resources related services, including services relating to payroll, workers' compensation insurance, and employee benefits. *Id.* ¶ 14; Dkt. No. 45-2, Ex. B. This document states, in relevant part:

> **Introduction to Justworks**. Your Worksite Employer has entered into a contract with Justworks Employment Group LLC ("Justworks") to assist Worksite Employer (defined below) with human resources related matters, such as payroll, workers' compensation insurance, and employee benefits, as agreed upon between Justworks and Worksite Employer.
>
> **Your Worksite Employer**. You acknowledge that Worksite Employer, and not Justworks, is the primary employer, which means that Worksite Employer retains control of the worksite; supervises and directs your day-to-day work activities; provides the facilities and furnishes the equipment and supplies for your work, including personal protective equipment, if any is required to perform your job duties; determines your work schedule; monitors your workload and productivity; ensures that you are properly trained to perform your job safely; ensures that you are covered by an effective Injury and Illness Prevention Program, which it has established if applicable; and determines your rate of pay and job classification.

---

[4] Plaintiff also did not allege what line of business Justworks was in; however, in her Amended Complaint, she alleged facts tending to show that it was in the human resource assistance business described on its web site. See, e.g., Compl. ¶¶ 20-24.

Dkt. No. 45-2, Ex. B at ¶ 1-2.[5] Paley does not allege any facts tending to show why she was required to sign this document, but it is obvious that this is a Justworks document, one intended to prevent Justworks from finding itself in the position it is in today – namely, of being considered to be anyone's employer just because it was handling ministerial administrative tasks on an outsourcing basis. That is clear because the second paragraph lists every factor that renders someone an "employer" under the law, and says that Bellum – not Justworks – is responsible for all those aspects of Paley's employment.

Paley began full-time employment with Bellum – a subsidiary of AMF Bellum Holdings, LLC and AMF Bowling Centers (collectively "Bowlero") – on or about December 1, 2021. Her title was Director of User Experience. Compl. ¶¶ 15, 29. As Director of User Experience, Paley researched customer interactions with Bellum's products, documented those findings, created presentations for stakeholders, developed training materials, tested products, identified issues, presented design proposals to senior management, and interviewed and hired staff. *Id.* ¶ 30.

Paley alleges, in conclusory fashion, that Bellum and Justworks jointly employed her from December 1, 2021 until her termination on July 20, 2022. *Id.* ¶ 17. She alleges that Bellum functioned as her "primary employer," and that Justworks was an "employer." *Id.* ¶ 18. Specifically, Paley alleges that Bellum controlled her day-to-day work environment—retaining control of the worksite, supervising her responsibilities, providing the facilities and equipment she used, determining her schedule and workload, ensuring her training and safety, and setting her rate of pay and job classification. *Id.* ¶ 18. She alleges that Justworks prepared her paychecks and W-2 forms, maintained her employment records, provided retirement benefits (for which she was not eligible), and, upon information and belief, covered her workers' compensation insurance. *Id.* ¶¶

---

[5] See *supra.*, n. 3 (the agreement can be relied upon because it is "integral" to the complaint).

20, 22-24. Justworks is listed as Paley's employer on federal income tax documents for the taxable years 2021 and 2022. *Id.* ¶ 21.

Paley further alleges, upon information and belief, that Bellum's human resources personnel acted on behalf of both Bellum and Justworks. *Id.* ¶¶ 26-27.

### B. Alleged Discriminatory Treatment

From early in her tenure, Paley alleges that Bellum fostered a hostile work environment in which male employees received preferential treatment. *Id.* ¶¶ 33-34. Her direct supervisor, Marc Jensen, Vice President of Products, allegedly excluded her from key decision-making meetings with stakeholders while including similarly situated male employees. *Id.* ¶ 37. Although Paley repeatedly asked to attend these meetings – particularly when her work product was being discussed – Jensen allegedly ignored or minimized her requests. *Id.* ¶¶38-39.

When Paley was permitted to attend meetings, she alleges that Jensen and senior management dismissed her contributions. *Id.* ¶ 40. Jensen also allegedly introduced her to stakeholders not by her title – Director of User Experience – but simply as "our UX Researcher," without giving her an opportunity to introduce herself. *Id.* ¶ 41.

Paley further claims that Jensen assigned her an unrealistic and disproportionate workload compared to her male counterparts, who were allegedly responsible for about one-third of the work assigned to her. *Id.* ¶ 42. She alleges that, despite her heavier workload, she was asked to assist project managers with additional tasks—requests not made of her male colleagues. *Id.* ¶ 44. Jensen allegedly denied her requests for additional staff while providing assistance to her male counterpart, and he offered mentorship to male staff but not to Paley. *Id.* ¶¶ 45-46.

Members of Bellum's senior leadership – including Ben Liss, President and COO; Josh Peck, Head of People; and Jensen -- discussed with Paley the need for additional staffing in her

division. *Id.* ¶ 54. Paley alleges that she was later told her division was a lower priority than divisions overseen by male leaders, despite her handling multiple projects without support. *Id.* ¶ 55.

## C. Paley's Internal Complaints

Whether or not these actions alerted Jensen to any claim of discrimination against Paley, he certainly became aware on June 22, 2022, when Paley notified him in writing that she was being subjected to gender bias and sex discrimination. *Id.* ¶ 47. Paley also brought these concerns to unnamed individuals in Bellum's Human Resources Department. *Id.* ¶ 49.

On March 30, 2022, Paley met with Peck regarding office culture issues affecting women. *Id.* ¶ 51. On April 12, 2022, she submitted a written account to Peck describing unequal treatment of women at Bellum and discussed these issues with him during an hour-long phone call. *Id.* ¶ 52. The next day, she informed Peck in writing of a conversation with Jensen in which Jensen allegedly dismissed her concerns. *Id.* ¶ 53.

Despite her repeated reports, Paley alleges that Bellum's human resources department conducted no investigation. *Id.* ¶ 50.

## D. Events Leading to Plaintiff's Termination

On July 12, 2022, Paley learned that Liss had selected a job applicant who would report directly to her. *Id.* ¶ 56. She alleges that, unlike male staff in similar roles, she was not given the opportunity to approve the hire. *Id.* ¶ 57. After she complained to Peck that she felt "singled out," Peck informed her of a new company policy pursuant to which Liss would interview all candidates. *Id.* ¶¶ 58-59. Paley alleges, albeit on information and belief, that the policy applied only to her; in her Amended Complaint she does not identify any male staffer who had input into Liss's hiring decisions about his direct reports after this "new company policy" was adopted. *Id.* ¶ 60.

6

Later that day, Paley notified Liss of the gender bias she perceived within Bellum and requested a meeting two days later. Liss declined to meet with her. *Id.* ¶¶ 61-62.

On July 20, 2022, Bellum fired Paley; the assigned cause was her "negative behavior." *Id.* ¶¶ 63-64. Paley alleges that Bellum did not identify any performance issues despite her repeated requests, and contends that she had never received a performance review indicating deficiencies in her job performance. *Id.* ¶¶ 65-66. She contends that she was fired in retaliation for her complaints of discrimination. *Id.* ¶ 69. She further notes that a male employee terminated for "negative energy" had received warnings and counseling prior to his discharge, which she did not receive. *Id.* ¶ 68.

### E. Allegations Regarding Justworks

Finally, Paley alleges, entirely on information and belief, that Justworks employed individuals at Bellum who were involved in the alleged discrimination; that Justworks knew or should have known of her complaints when they were reported to human resources; and that Justworks failed to take corrective actions. *Id.* ¶¶ 70-72. She further alleges, upon information and belief, that Justworks participated in the retaliation that led to her termination. *Id.* ¶ 73. All of these are conclusory allegations backed up by no specific factual support.

### III.    Procedural Posture

On March 28, 2023, Paley filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and Fair Employment Practice Agency ("FEPA"). Dkt. No. 45-2, Ex. D; Dkt. No. 60-1, Ex. 1. She filed her charge against Bowlero Corporation. The Charge does not name anyone else, including specifically either Bellum or Justworks. Plaintiff represents, in a declaration submitted in response to defendants' motions, that

she was not represented by legal counsel and did not receive assistance from legal counsel concerning filing the Charge. Dkt No. 56-1 at ¶ 8.[6]

The EEOC cross-filed Paley's Charge with Delaware's FEPA, which is where Bellum was incorporated, despite the fact that Paley's Charge listed her residence as Colorado. Dkt. No. 45-2, Ex. D; Dkt. No. 60-1, Ex. 1.

On February 19, 2025, the EEOC granted Paley's request for a Notice of Right to Sue, and advised her that any lawsuit had to be filed within 90 days of receipt. Dkt. No. 42-1; Dkt. No. 45-2, Ex. E.

Paley initiated this action by filed a complaint against Bellum and Justworks on April 3, 2025, Dkt. No. 1, with an Amended Complaint filed on April 10, 2025. Dkt. No. 42.

Defendants each moved to dismiss the Amended Complaint on August 11, 2025. Dkt. No. 45; Dkt. No. 48.[7]

## STANDARDS OF REVIEW

### I.    Rule 12(b)(1)

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is familiar:

> A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the

---

[6] This is a fact of no relevance, since lack of counsel does not excuse a late filing or the failure to name a party. *Fletcher v. Runyon*, 980 F.Supp. 720 (S.D.N.Y. 1997) (dismissing a pro se Title VII complaint filed 98 days after the plaintiff received notice of the agency's final action); *Cooke v. Frank Brunckhorst Co., LLC*, 788 F.Supp.3d 390, 397 (E.D.N.Y. 2025). In *Lee v. Verizon*, No. 15-CV-523 (DLI) (PK), 2016 WL 737916, at *2 (E.D.N.Y. Feb. 23, 2016), the court said that dismissal was appropriate when an EEOC charge was not timely filed, "This is true even with respect to pro se litigants."

[7] Justworks filed its memorandum in support of its motion to dismiss on August 12, 2025. Defendant's memorandum exceeds by five pages the twenty-five **page limit** for memoranda of law in support of or in opposition to motions. (*See* the Court's Individual Practices and Procedures, Rule IV(E)). Defendant did not ask for leave to file an oversized brief. Although I will overlook Defendant's non-compliance in this instance, I note that I do not look favorably upon disregard of my rules.

> pleadings to resolve jurisdictional questions. The Court must accept as true the factual allegations contained in the Complaint, but it will not draw argumentative inferences in favor of Plaintiff because subject matter jurisdiction must be shown affirmatively. Plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.

*Jia Hu Qian v. Siew Foong Hui*, 2012 WL 1948820, at *2 (S.D.N.Y. May 30, 2012); *Zaldivar v. Anna Bella's Café, LLC*, No. 11-CV-1198 JS ETB, 2012 WL 642828, at *2. "Subject-matter jurisdiction . . . can never be forfeited or waived." *Union Pac. R.R. Co. v. Bhd. Of Locomotive Eng'rs and Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81 (2009).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll reasonable inferences should be drawn in favor of the plaintiff," but the "complaint must contain sufficient allegations to nudge a claim; across the line from conceivable to plausible.'" *Sphere Digital, LLC v. Armstrong*, No. 20-cv-4313 (CM), 2020 WL 6064156, at *4 (S.D.N.Y. Oct. 14, 2020) (quoting *Twombly*, 550 U.S. at 555). Where a plaintiff fails to "nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Federal Rule 12(b)(6) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the truth of the allegations. *Id.* At 545.

## DISCUSSION

### I.    Bellum's Motion to Dismiss Plaintiff's CADA Claims for Lack of Subject Matter Jurisdiction Is GRANTED

Bellum moves to dismiss Plaintiff's claims under CADA (Counts III, IV and V) for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Bellum contends that Plaintiff failed to exhaust administrative remedies as required under Colorado law.

Bellum is correct.[8]

A federal court exercising supplemental jurisdiction over a state law claim must apply state substantive and federal procedural law. *Felder v. Casey*, 487 U.S. 131, 151 (1988). Case law provides that a state law's requirement as to the exhaustion of administrative remedies is substantive law. *Id.*; *see also Transcontinental & Western Air, Inc. v. Koppal*, 345 U.S. 653, 656 (1953) ("As to state law claims, a federal court must apply the state's substantive law regarding exhaustion of administrative remedies"); *Lamar Co., L.L.C. v. Miss. Transp. Comm'n*, 786 F. App'x 457 (5th Cir. 2019) ("Litigants would engage in forum shopping if federal courts and state courts applied different administrative exhaustion regimes, because some claims could proceed in one court system but not the other. . . . Thus, we treat exhaustion as substantive.")

Because Paley's CADA claims are before this Court based on supplemental jurisdiction, the Court is obligated to apply CADA's substantive law exhaustion requirements to Paley's claim. And so we turn to that statute.

---

[8] Interestingly, Bellum did NOT move, as Justworks did, to dismiss for failure to exhaust on the ground that it was not actually named in the charge filed by Plaintiff. Dkt. No. 60-1, Ex. 1. That charge named only Bowlero as a Respondent. I will assume that Bellum has its reasons for not asserting that defense and will focus only on the arguments it actually made.

10

CADA provides, in relevant part, "No person may file a civil action in a district court . . . on an alleged discriminatory or unfair practice prohibited by parts 4 to 7 of this article without first exhausting the proceedings and remedies available to him under this part 3." Colo. Rev. Stat. § 24-34-306(14).

To satisfy CADA's exhaustion requirement, a claimant must file a charge of discrimination with the Colorado Civil Rights Division ("CCRD") within 300 days after the alleged unlawful conduct occurred before bringing a claim. Colo. Rev. § 24-34-303; *See Holsome v. Tek-Experts Colo., Inc.*, No. 22-cv-00092-DDD-MDB, 2023 WL 2242502, at *4 (D. Colo. Feb. 27, 2023) (citing Colo. Rev. Stat. § 24-34-306(1)(1)). "[I]f a charge is not timely filed it is barred." *Id.* At 24-34-303.

Because Colorado is a "dual filing" state, that requirement can be satisfied by filing a charge with the EEOC within 300 days, as long as the charge indicates that it should also be deemed filed with the Fair Employment Practices Agency (FEPA) in the relevant state. *Rodriguez v. Wet Ink*, LLC, 603 F.3d 810, 814 (10th Cir. 2010). When a charge is filed with the EEOC, it is that agency's responsibility to forward a copy to the relevant FEPA. *Id.*

A right to sue letter from the CCRD constitutes final agency action and completes the exhaustion process. Once issued, if the plaintiff fails to file suit within ninety days, the claim is "barred, and *no district court shall have jurisdiction* to hear the action." CO. Rev. Stat. § 24-34-306(2)(b)(I)(C) (emphasis added); *Robinson v. Reg'l Transp. Dist.*, No. 16-cv-2870-WJM-MJW, 2018 WL 2414866, at *3 (D. Colo. May 29, 2018) ("The absolute bar to filing after ninety days . . . applies equally in state and federal court."). However, that letter must come directly from CCRD. Colo. Rev. Stat.

§ 24-34-306(15). Receipt of a right to sue letter from the EEOC does not constitute final agency action for purposes of CADA: "A notice of right to sue from the EEOC is not sufficient to demonstrate exhaustion of administrative remedies for purposes of a CADA claim." *Littlewood v. Novartis Pharms. Corp.*, No. 21-cv-02559-CMA-SKC, 2022 WL 3081919, at *7 (D. Colo. Aug. 3, 2022); *see also Jackson v. City & Cnty. Of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 435556, at *2 n.1. (D. Colo. Sept. 24, 2012) (finding that "an EEOC right-to-sue letter does not strip the CCRD of jurisdiction over CADA claims.").

It is apparent from the language of the statute that Colorado treats its exhaustion requirement as jurisdictional, rather than as a precondition that can be waived by the parties or the court, as is the case with Title VII. The statutory language refers to stripping courts of jurisdiction; it could not be clearer. The Colorado Supreme Court has held that "section 24-34-306(14) was intended to require . . . an individual claimant exhaust administrative remedies for claims brought pursuant to [CADA]," *Brooke v. Rest. Servs., Inc.*, 906 P.2d 66, 72 (Colo. 1995), and has noted that exhaustion is "a condition precedent to bringing an action in district court." *City of Colorado Springs v. Conners*, 993 P.2d 1167, 1169 n.3 (Colo. 2000). Frankly, the Colorado Supreme Court's use of the phrase "condition precedent" in infelicitous, since that phrase, when used in the context of Title VII exhaustion, would not be considered jurisdictional. However, given the clear statutory language, federal courts in Colorado uniformly treat the failure to exhaust CADA claims as a jurisdictional bar; they routinely dismiss CADA claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) if the plaintiff has failed to exhaust her administrative remedies under CADA. *See, e.g., Jackson v. City & Cty. Of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556, at *2 (D. Colo. Sept. 24, 2012) (case dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction when Plaintiff failed to exhaust administrative remedies); *Kane*

*v. Honeywell Hommed, LLC*, No. 11-cv-03352-PAB-KLM, 2012 WL 4463701, at *2 (D. Colo. Sept. 26, 2012) (same); *Smallwood v. Denver Pub. Sch.*, No. 15-cv-00378-RM-CBS, 2016 WL 447558, at *1 (D. Colo. Feb. 5, 2016) (adopting the magistrate's recommendation that the court dismisses the plaintiff's CADA claim for lack of subject matter jurisdiction); *Brooks v. Denver Pub. Sch.*, No. 17-cv-01968-REB-MEH, 2017 WL 5495793, at *7 (D. Colo. Nov. 16, 2017) ("Because failure to exhaust in this context deprives the district court of subject matter jurisdiction, a plaintiff must allege exhaustion in the complaint to establish the court's jurisdiction.").

Since I do not routinely apply Colorado law, I will follow the lead of Colorado's federal courts and adopt their interpretation of the Colorado Supreme Court's decision in *City of Colorado Springs* – an interpretation that seems compelling in light of the language of the statute, which I have highlighted above. I thus conclude that CADA makes exhaustion a jurisdictional prerequisite to suit under CADA, and so deprives a district court of the power to adjudicate CADA claims when the plaintiff has failed to exhaust.

Paley does not allege that she ever filed a charge with the CCRD,[9] or that she received a CCRD right-to-sue notice within ninety days prior to filing this lawsuit, as the law plainly requires. But she argues that she is entitled to an exception from the Colorado exhaustion requirement on equitable grounds. Noting that Colorado is a "dual filing" state, Paley states that she did everything she needed to do to exhaust her CADA as well as her federal claims when she filed her EEOC charge. She argues that the EEOC erroneously failed to send her charge to the Fair Employment Practices Agency (FEPA) in the correct state, and that this agency error frustrated her ability to exhaust. She urges that the EEOC's error should equitably excuse her from complying with that requirement. For this proposition, she cites *Moreland v. Johnson*, 806 F.3d 961, 965 (7th Cir. 2015).

_____

[9] Even if Plaintiff's charge satisfied Colorado's exhaustion requirement – which it does not -- it fails to so much as mention Bellum, which would be yet another reason why she failed to exhaust her administrative remedies.

13

There are two reasons why this argument fails. The first is that it is precluded by the jurisdictional nature of the exhaustion requirement in Colorado. The second is that this case is most decidedly not *Moreland.*

As to the first reason: no less authority than the United States Supreme Court has held that there are no "equitable exceptions" to jurisdictional requirements. In *Santos-Zacaria v. Garland,* 598 U.S. 411, 416 (2023), the Supreme Court said, "Because courts are not able to exceed limits on their adjudicative authority, they cannot grant equitable exceptions to jurisdictional rules." Because Colorado's exhaustion requirement has been ruled to be jurisdictional (unlike Title VII's exhaustion requirement), the plaintiff's equitable argument cannot even be considered. Case closed.

Nothing in *Moreland* – a Title VII case arising under federal law, and so a case in which exhaustion was not jurisdictional -- contravenes that result. But on the facts of this case, Paley has not come close to offering any reason why equitable considerations should excuse her admitted failure to obtain a right to sue letter from the CCRD.

Let us start by looking at what happened in *Moreland.*

In *Moreland,* the Seventh Circuit noted that the Plaintiff filed an initial charge with the EEOC alleging that she was discriminated against because of her race, age, and sex in violation of Title VII. *Moreland, supra.,* 806 F.3d at 962. As Plaintiff was an employee of the Department of Homeland Security, she filed an administrative complaint with that agency. Four years later, she finally prevailed on her claim that DHS had discriminated against her. While that proceeding was pending, she was not reimbursed for travel expenses in the same manner as other employees. She believed that this was retaliation for her filing her administrative complaint. The administrative law judge in the first proceeding told the plaintiff (who was appearing pro se) to file a second

14

complaint alleging this additional discriminatory behavior – which she did. She filed a new complaint, which started a new administrative proceeding; she did not amend her original complaint to assert the retaliatory behavior.

It turns out there was a "spin off" regulation, pursuant to which Plaintiff should have filed her retaliation claim as an amendment to her original claim. But no one in the EEOC-Office of Federal Operations (EEOC-OFO), which handles administrative proceedings on claims of discrimination filed by federal employees, either advised the plaintiff that she should have moved for leave to amend her original complaint or consolidated her new complaint (which, being a claim of retaliation, was plainly related to the original proceeding) with the original proceeding. In fact, the ALJ in her original proceeding advised the Plaintiff that she could not assert her retaliation claim in the original proceeding; that is why, at his direction, she started an entirely new proceeding. Nonetheless, DHS, relying on the "spin off" regulation, dismissed her second complaint because it should not have been filed as a stand-alone claim. The EEOC-OFO affirmed that decision.

Once she prevailed in her first administrative proceeding, Plaintiff brought suit on both her discrimination and her retaliation claims in the United States District Court for the Eastern District of Wisconsin. The district court dismissed the retaliation claim on a motion for judgment, on the ground that plaintiff had failed to exhaust her administrative remedies. *Moreland v. Johnson*, 2014 WL 4748231, at \*3 (Sept. 23, 2014). Reversing the lower court's decision, Judge Posner noted, "[A] complainant's failure to exhaust administrative remedies prior to bringing suit against her employer 'does not preclude establishing the claim in federal court when the failure to amend the charge to reflect a new claim *is due to the fault of the EEOC*.'" *Moreland*, 806 F.3d at 965 (citing *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 386-66 (9th Cir. 1990) (emphasis added). The

15

EEOC-OFO, he said, erred because it could have consolidated Plaintiff's claims on appeal, thus keeping her second claim alive; but it failed to do so. *Moreland*, 806 F.3d at 965. Therefore, it "is the EEOC's fault that the retaliation claim did not become part of the original case." *Id.*

*Moreland* presents a pretty unique set of facts and a rather glaring instance of administrative error. It is arguably *sui generis* and sets no discernable precedent. And it is not the law of this Circuit. But let us compare it to the argument made in this case.

Paley contends that *Moreland* excuses her failure to exhaust because it arose from administrative error. She assigns as erroneous the EEOC's decision to send her "dual filed" charge to the FEPA in Delaware – the state she identified as the residence of the employer listed in her charge, which is Bowlero – rather than the FEPA in Colorado, where Paley lives. Dkt. No. 55 at 2. Paley urges that the filing was erroneous because she "listed her residence as Colorado and indicated that the alleged discriminatory conduct occurred while she worked in Colorado." *Id.*

But I fear I must take exception to Plaintiff's characterization of her charge. Nowhere in the charge does it indicate that the alleged discriminatory conduct occurred while Paley worked in Colorado. Let's look closely at the charge, which the Defendants attaches to its respective motions to dismiss at Dkt. No. 60-1, Ex. 1.[10]

At the top of the charge, Plaintiff indicates that she intends to file the charge with the EEOC and with "FEPA." The charge then identifies the "Delaware Department of Labor" as the relevant state or local agency. I will assume, for purposes of argument, that Plaintiff herself did not insert the words "Delaware Department of Labor" on her charge; some functionary at the EEOC did that. But plaintiff did not identify on the charge the state to which she wanted her charge sent – for

---

[10] See supra., n. 3 (the Charge can be relied upon because it is "integral" to the complaint).

example, she did not say, "Please send this charge to the FEPA in Colorado" – thus leaving it to the EEOC to figure out where to refer the charge.

The EEOC could only decide what FEPA to notify by examining the text of the charge. I have done precisely that. Aside from listing Colorado as her then-current address, the charge does not so much as mention that state. In the particulars of her charge, the word "Colorado" does not appear at all. Nor, significantly, is there any indication in the document – most especially in Plaintiff's lengthy recitation of what happened to her – that the plaintiff was working remotely from a home in Colorado during her tenure with "Bowlero." The charge lists Bowlero as Plaintiff's employer and gives its address as 1209 Orange Street, Wilmington, DE, 19801; its does not list any Colorado address at which her employer could be found. And the charge does not indicate that Plaintiff lived in Colorado while she was employed by Bowlero; for all the EEOC knew, Plaintiff moved to Colorado after she was fired by her Delaware employer – an event that took place eight months prior to the filing of the charge.

Since the only address associated with Paley's employer was a Delaware address, and since Paley did not disclose anywhere in her charge that she was actually working for her Delaware-based employer in or from Colorado, the EEOC can hardly be faulted for sending her complaint to the state where, according to Paley, her "employer" resided, and where she presumptively worked – Delaware.[11]

---

[11] And of course Plaintiff did not so much as mention Bellum in her charge, or indicate that she was actually working for an enterprise that was based in New York City. In this lawsuit, Plaintiff does not sue Bowlero of Delaware, but Bellum of New York – an entity that is not named in the charge, despite the EEOC's plain directive that, if there were multiple discriminating entities, they were to be identified in the text of the charge. In this lawsuit, Plaintiff alleges that Bellum, not Bowlero, was her employer; Bowlero is identified only as a parent or affiliate of Bellum, her employer. Compl. ¶ 10. But as I noted above, Bellum has not elected to contend that Plaintiff failed to exhaust on the ground that it was not named in the charge; therefore, I will not consider that as a basis for dismissal.

In short, even if I could consider this issue, *Moreland* would not counsel equitably excusing Paley from exhausting her administrative remedies in Colorado, because the EEOC did not err in sending the charge to the FEPA in the state where, according to Plaintiff, her employer was located. The EEOC is not required to read minds. Rather, charging parties are required to give the agency any and all relevant information. Plaintiff urges that she was not represented by counsel when she filed her charge, Dkt. No. 56-1 at ¶ 8, but that does not excuse her failure to include in the charge facts that would have alerted the EEOC to any involvement of Colorado in Plaintiff's case. Many individuals, some with far less executive skill than Plaintiff, a Director-level employee, claims to have, file charges with the EEOC without benefit of counsel; somehow, those charges manage to advise the EEOC about where the filers worked.

We know today, from the Amended Complaint, that Plaintiff actually worked for Bellum, which was located in New York (otherwise what is this case doing in this court). And we know from the motion papers that she now alleges that she was working remotely from Colorado during her tenure at Bellum (although that purported fact is not mentioned in the text of the Amended Complaint). *But the EEOC was apprised of none of this.*

I thus cannot conclude that there was any agency error at all, let alone error of the magnitude that, like the agency error in *Moreland,* prevented Plaintiff from exhausting her administrative remedies. That being so, I could find no equitable reason to suspend Colorado's exhaustion requirement on the ground that the EEOC somehow prevented Plaintiff from complying with it.[12]

---

[12] I confess I would be shocked if Plaintiff were not given a copy of the charge she filed. That charge that is in the record, Dkt. 60-1. Ex. 1, plainly states that the relevant state FEPA was the Delaware Department of Labor. Plaintiff, who alleges that she occupied a Director-level position at Bellum, is presumably capable of reading the charge and seeing that it was being filed with the FEPA in Delaware, not Colorado. But there is no evidence that Plaintiff cried foul, or contacted the EEOC to say, "You have made a mistake, you should send this to the FEPA in Colorado." I can only conclude that this whole agency error argument is latterly-contrived. But since the requirement is jurisdictional, I cannot really consider her equity argument at all.

Plaintiff's reliance on *Angotti v. Kenyon & Kenyon*, 929 F.Supp. 651, 657 (S.D.N.Y. 1996), for the application of "equitable considerations" to her situation is equally misplaced. First, Angotti is not relevant because it discusses equitably dispensing with the exhaustion requirement under Title VII, where failure to exhaust does not divest a court of jurisdiction; as we have seen, when failure to exhaust is jurisdictional, as it is here, equity does not have a role to play. *Santos*-Zacaria, 598 U.S. at 1113 (2023). Second, assuming arguendo that equitable considerations could excuse compliance with a jurisdictional exhaustion requirement, the only "equitable consideration" that Plaintiff identifies is the EEOC's failure to send her charge to the CCRD. As the extended discussion of why *Moreland* does not apply proves beyond peradventure, that dog won't hunt.

In short, Plaintiff failed to exhaust her administrative remedies in Colorado. Therefore, the Court lacks subject matter jurisdiction over Counts III, IV, and V, and Bellum's motion to dismiss those claims is GRANTED.

## II.    Justworks' Motion to Dismiss The Complaint In Its Entirety Is GRANTED

Unlike Bellum, which sought only dismissal of the CADA claims, Justworks has moved to dismiss all the claims asserted against it – whether asserted under state or federal law. Justworks' motion is GRANTED in all respects, and the complaint is dismissed as against it with prejudice.

### A.  Plaintiff Never Exhausted Her Administrative Remedies As Against Justworks

Plaintiff never exhausted her administrative remedies as against Justworks. She did not exhaust them under federal law and she did not exhaust them under state law.

"As a precondition to filing a Title VII claim in Federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003); *see also* 42 U.S.C. § 2000-e-5(e)-(f). "Exhaustion of administrative remedies through the EEOC is an 'essential element' of the Title VII . . . statutory

19

scheme[ ] and, as such, a precondition to bringing such claims in federal court. *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam) (quoting *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)). That purpose "would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 26 (2d Cir. 1985).

Similarly, as we have already seen, under Colorado law, "No person may file a civil action in a district court . . . on an alleged discriminatory or unfair practice prohibited by parts 4 to 7 of this article without first exhausting the proceedings and remedies available to him under this part 3." Colo. Rev. State. § 24-34-306(14).

Under federal law, "[A] plaintiff's failure to obtain a notice-of-right-to-sue-letter is not a jurisdictional bar, but only a precondition to bringing a Title VII action that can be waived by the parties or the court," and accordingly, a failure to obtain a right-to-sue letter can be excused by the Court on equitable grounds. *Pietras v. Bd. Of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 474 (2d Cir. 1999).

But as we have seen, Colorado's exhaustion requirement *is* jurisdictional – which means that a court cannot entertain a lawsuit unless a plaintiff first exhausts administrative remedies with Colorado's Fair Employment Practices Agency, the CCRD. See discussion at pp. 12-13, *supra*.

As the discussion of Bellum's motion to dismiss reveals, Plaintiff filed a timely charge of discrimination with the EEOC. Dkt. No. 45-2, Ex. D. In that charge she named Bowlero – an entity alleged to be an umbrella organization with which Bellum is affiliated – as the one and only

20

respondent who discriminated against her. Justworks is not even mentioned in her charge; the word "Justworks" does not appear in the document. *Id.*

The failure to mention Justworks cannot be excused by contending that Bowlero, which she identifies as her employer, was only her "primary" employer – language no doubt derived from the Justworks form she signed on November 21. See discussion at pp 3-4, *supra*. Paley does not indicate that she had "employers" other that Bowlero on the Charge form. And the EEOC's Charge form explicitly advises filers that they are to list every entity that allegedly discriminated against the filer. It says, "Name is the Employer, [   ] That I Believe Discrimination Against Me or Others (*If more than two, list under PARTICULARS below*)." The charge form contains spaces  on which two separate discriminating entities can be identified by name and address; the directions, which are italicized to make sure that they are called to the filer's attention, advise that even more than two alleged discriminators can be listed and should be listed on the Charge form.

So Plaintiff was on notice that, if she thought Justworks had participated in discriminating against her, she needed to list Justworks on her Charge form – either in the second line under Bowlero, or in her Charge Particulars. She did not do either of those things. Justworks is nowhere mentioned in the Charge. That being so, there was certainly no way for the EEOC to notify Justworks that it had been charged with discrimination, and no way for Justworks to respond to any claims at the administrative level.

Plaintiff argues that Justworks should be deemed to have been encompassed by the charge under the so-called "identity of interest" exception to exhaustion discussed in *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991). In other words, Plaintiff argues that Justworks had an identity of interest with Bowlero, the lone respondent named in the EEOC charge. She does not explain why this should be so. And it is not so.

The "identity of interest" exception allows a plaintiff to proceed against a defendant not named in the administrative charge "where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." *Id.* Because there is no clear (or even remote) identity of interest between Justworks – the unnamed party – and Bowlero – the named party – the exception does not apply.

Indeed, Paley's complaint is devoid of allegations that show *any* interconnectedness or alleged relationship between Justworks and Bowlero, the named Respondent on the Charge. The Amended Complaint alleges that Justworks had a contract with *Bellum*, Compl. ¶ 14, and that Bellum was a "subsidiary and/or an affiliate" of Bowlero. Compl. ¶10. But fact that Bowlero's "subsidiary and/or affiliate" had a contract with Justworks does not plausibly suggest that Justworks had any relationship at all with *Bowlero* – an entirely separate corporation – let alone the "clear identity of interest" that is required to apply the "identity of interest" doctrine.

The Second Circuit in *Johnson* outlined a four-factor test to determine whether an identity of interest exists so as to defeat a motion to dismiss for failure to exhaust administrative remedies:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a name [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Johnson*, 931 F.2d at 209. These four considerations are factors, not elements, and no one factor is dispositive. Courts weigh the factors holistically. *Batiste v. City University of New York*, No. 16-3358 (VEC), 2017 WL 2912525, at *34 (S.D.N.Y. July 7, 2017) ("This multi-factor test is not a mechanical one, and no single factor is dispositive").

22

Plaintiff's allegations meet none of these four factors.

Plaintiff specifically alleges that she was told that Justworks would be performing administrative tasks before her employment began, Dkt. No. 45-2, Ex. B. She also alleges that Justworks was the "employer" listed on her Form W-2. Comp. ¶21. So, Paley was aware of Justworks' existence at the time she filed her charge. She could have named it if she thought Justworks had discriminated against her. This negates the first factor.

There is no similarity of names between Bowlero and Justworks, which negates the second factor.

As for the third factor: The failure to name Justworks plainly prejudiced it before the EEOC. Because Justworks was not named in the Charge, it was never made aware that it was being accused of discrimination. It thus had no opportunity to advise the EEOC that it was merely an independent contractor performing ministerial administrative tasks on an outsourcing basis, which could well have resulted in an administrative dismissal. And since Justworks has no relationships, corporate or contractual, with Bowlero – unlike Bellum, which is alleged to be a Bowlero affiliate – there is no basis to infer that Justworks might have learned of the charge through Bowlero. So the third factor augurs against a finding of identity of interest.

Finally, the only thing that Justworks allegedly represented to Plaintiff was that it was not going to perform the duties and responsibilities of an employer under the law. That negates the fourth factor.

In short, none of the four *Johnson* factors suggests that Justworks should be included in this case on the ground that it has an "identity of interest" with Bowlero.

So – no federal exhaustion.

Insofar as Colorado is concerned: Plaintiff also failed to exhaust her administrative remedies in connection with her claims against Justworks under CADA. The extensive discussion of Colorado's exhaustion law found above in connection with Bellum's motion to dismiss applies equally to Justworks. For the same reasons that the court concluded that Paley failed to exhaust her CADA claims as to Bellum, she also failed to exhaust her CADA claims against Justworks. Moreover, Paley's failure to so much as mention Justworks in her charging document means that she necessarily failed to exhaust her administrative remedies as to it under state as well as federal law.

In short, Paley failed to exhaust her administrative remedies as to Justworks, whether with the EEOC or with Colorado. As more than 300 days have passed since the last act of discrimination occurred, Plaintiff cannot now remedy her default by filing a new EEOC charge against that company. Her claims against Justworks are barred for failure to exhaust.

### B. Justworks Is Not Plaintiff's Employer for Title VII Purposes

Even if there were some question about whether Plaintiff had exhausted her administrative remedies – and there is not – Justworks would be entitled to dismissal of the complaint in its entirety because no facts are alleged from which a trier of fact could plausibly infer that Justworks was Plaintiff's employer – whether under Title VII or CADA.

Title VII applies to employers, employment agencies, labor organizations, and joint labor-management committees controlling apprenticeship or training programs. A charge must allege that the respondent engaged in an unlawful employment practice as defined under Title VII. 42 U.S.C.A. § 2000e-5. Title VII prohibits an "employer" from "fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. And under Title VII an "employer" cannot "retaliate[e] on account of an employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination." *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013).

Similarly, to be liable under CADA, an entity must be an "employer" within the meaning of the Act. *See e.g., Bank v. Allied Jewish Federation of Colorado*, 4 F.Supp.3d 1238, 1241 (D. Colo. 2013). CADA defines "employer" as "the State of Colorado, or any political subdivision, commission, department, institution, or school district thereof," and, as relevant hereto, "ever other person employing persons within the state. . . ." *Id.* (quoting C.R.S. § 24-34-401(3)). While CADA does not define the terms "employ" or "employing," *Id.*, the language of CADA "parallels that of its federal counterpart in Title VII, and the Colorado courts look to federal cases for guidance in applying the state statute." *Harris v. Environmental Materials LLC*, 2018 WL 10604755, at *2 (D. Colo. 2018) (citing *Colorado Civil Rights Com'n v. Big O Tires, Inc.*, 940 P.2d 397, 399 (Colo. 1997)).

Paley's claims under both statutes must be dismissed as against Justworks because no facts are alleged tending to show that Justworks was anything other than an independent contractor to which Bellum outsourced certain purely administrative functions relating to payroll and benefits. Such activity is not consistent with an employer-employee relationship.

"The existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. N.Y.S. Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006), *cert. denied*, 554 U.S. 917 (2008); *see also O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir. 1997) (holding that Title VII does not apply to an "unpaid intern" because she is not an "employee"); *Eisenberg v. Advance*

25

*Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000) ("Title VII . . . cover[s] 'employees,' not independent contractors.").

The Second Circuit has recognized that "in certain circumstances" an employee may "assert employer liability against an entity that is not formally his or her employer." *Arculeo v. On-Site Sales & Marketing, LLC*. 425 F.3d 193, 197 (2d Cir. 2005). Pursuant to the "joint employer doctrine," one such circumstance exists when "an employee, formally employed by one entity" is "assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity. *Id.* at 198. That rule does not apply to the facts alleged in this case.

Joint-employer status exists only when two or more employers exert significant control over the same employees and "share or co-determine those matters governing essential terms and conditions of employment." *NLRB v. Browning-Ferris Industries, Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982). Factors indicating significant control include "authority to hire, fire, and discipline, control over pay and insurance, and supervision, which can bear on whether an entity, which is not the formal employer, may be considered a joint employer." *Arculeo v. On-Site Sales & Marketing*, 425 F.3d 193, 202 (2d Cir. 2005); *see, e.g.*, *Bristol v. Bd. Of Cnty. Comm'rs of Cnty. Of Clear Creek*, 312 F.3d 1213, 1218 (10th Cir. 2002) ("Under the joint employer test, two entities are considered joint employer . . . if they both 'exercise significant control over the same employees.'"); *Plaso v. IJKG, LLC*, 553 F. App'x 199, 204 (3d Cir. 2014) (quoting *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997) ("[A] joint employment relationship exists when 'two entities exercise significant control over the same employees.'").

Paley's complaint does not plausibly plead that Justworks exercised any of these forms of control over her. She does not allege that Justworks, or anyone at Justworks, could hire or fire her,

could discipline her, could decide how much she was paid, or could decide what insurance she was entitled to, or could supervise her performance – the sorts of things that entities found to be joint employers do. *See, e,g., St. Jean v. Orient-Express Hotels Inc.*, 963 F.Supp.2d 301, 308 (S.D.N.Y. 2013) (holding the Plaintiff pled facts sufficient to show the Defendant was her joint employer because she reported to Defendant's employees and Defendant handled hiring and termination).

In fact, Plaintiff affirmatively pleads that she was required, prior to starting work, to sign a document acknowledging that every one of the functions that makes one an "employer" under the law was to be performed by her "Workplace Employer" – Bellum – and not by Justworks. Dkt. No. 45-2, Ex. B.[13]

Plaintiff alleges that Justworks performed the sort of ministerial administrative tasks that companies often outsource to an independent contractor – handling the technicalities of payroll administration (issuing paychecks and preparing W2 forms), administering Bellum's defined-contribution plan for retirement benefits and maintaining certain employment records for the company. Compl. ¶¶ 14, 20-24. All these tasks that are ordinarily performed by a human resources department when kept in-house, but they are often outsourced.[14] These allegations do not admit of any inference that Justworks controlled any aspect of Plaintiff's employment, which is what is required of an employer under Title VII. Indeed, it is well settled that the performance of administrative functions falls well short of the level of operational control the joint-employer doctrine demands. *See Felder v. United States Tennis Association*, 27 F.4th 834, 847 (2d Cir. 2022) (recognizing mere provision of payroll or record-keeping alone does not establish a joint-employer relationship without indicia of control over employment terms and working conditions).

---

[13] See *supra.*, n. 3 (the agreement can be relied upon because it is "integral" to the complaint).

[14] If this were not so, firms like ADP, America's best known outsourcing firm for administrative tasks like payroll, taxes and benefits management, would not exist.

The only *plausible* inference that can be drawn from the allegations of the Amended Complaint is that Justworks operated exactly like a smaller version of ADP – as an independent contractor performing discrete outsourced administrative functions, without performing or having the power to perform any of the kind of supervisory employment decisions that a true "employer" makes. Plaintiff actually alleges that "Justworks entered a contract with Bellum . . . ," Compl. ¶ 14, an allegation that completely eviscerates any suggestion that the two companies were acting in any manner other than pursuant to a contract – one that is not alleged to have conferred on Justworks any of the power traditionally exercised by true employers. And as I have already noted, Plaintiff alleges that she signed a document in which she acknowledged that no one from Justworks would be setting her compensation, supervising her performance, providing her with training, or furnishing her with any equipment, setting her schedule or otherwise doing any of the things that "employers" do. See *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 216 (3d Cir. 2015) (finding a joint employer-employee relationship to exist because the employer gave [Plaintiff] assignments, directly supervised him, provided site-specific training, furnished any equipment necessary, and verified the number of hours he worked on a daily basis.").

Plaintiff notably does not allege that anyone from Justworks perpetrated or participated in the perpetration of any of the actions that Plaintiff identifies as gender discrimination. To the contrary, every discriminatory act described in the Complaint – exclusion from meetings, dismissive treatment, disproportionate workload, denial of staff or mentorship, and ultimately termination – is alleged to have been perpetrated by employees of Bellum. Paley does allege that Justworks "should have known" about the discriminatory treatment she received at the hands of Bellum and Bellum employees, Compl. ¶ 71, but such a conclusory allegation is not the sort of "well pleaded" contention of fact that must be accepted as true on a motion to dismiss. And in any

28

event, knowledge of an employer's defalcations does not confer "employer" status on an outsider; only evidence that an entity controlled the terms and conditions of the plaintiff's employment suffices to render someone an "employer" for Title VII purposes.

Paley's reliance on *Fowler v. Scores Holding Co., Inc.* 677 F.Supp.2d 673, 681 (S.D.N.Y. 2009), is entirely misplaced. In *Fowler,* the Plaintiff alleged that the defendant had "centralized control of labor relations, whereby its licensees . . . followed uniform policies, standards, and common management," allegations that go to the heart of joint-employer control. 677 F.Supp.2d 673, 681 (S.D.N.Y. 2009). *Id.* at 680. In siding with the Plaintiff, the Court reasoned, "Although no one factor [in determining a joint employer-employee relationship] is determinative . . . control of labor relations is the central concern." *Id.* at 681 (quoting *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)).

In the case at bar, Paley alleges nothing that would admit of an inference that Justworks exercised any "control of labor relations" at Bellum. Nor does she allege that the employees of Bellum and of Justworks "followed uniform policies, standards and common management." Justworks performed ministerial tasks that Bellum chose to outsource. Merely handling payroll (without having any power to set anyone's rate of pay) and handling of retirement benefits (without the power to decide whether an employee was entitled to participate in a benefits plan) does not reach the threshold required to sufficiently plead that Justworks was a joint employer with Bellum. These functions have little, if any, relevance to the alleged discrimination. *See Lima v. Addeco*, 634 F.Supp.2d 394, 401 (S.D.N.Y. 2009) (holding Plaintiff failed to show Defendant was a joint employer because "no reasonable jury could find [Defendant] knew or should have known about unlawful discriminatory conduct . . .").

Nor can Plaintiff hang her hat on the fact that the document she signed – the one that acknowledged that Bellum, not Justworks, would take all the actions that render someone an employer under the law – stated that the Worksite Employer (Bellum) and not Justworks was her "primary employer." That phrase cannot plausibly be interpreted as acknowledging that Justworks was in fact an "employer" of Paley, since it is followed by language that makes it crystal clear that Justworks would not be performing any of the duties or assuming any of the obligations of an "employer" under the law.

Finally, while Plaintiff alleged in the Amended Complaint, Compl. ¶21, that Justworks was listed as the "employer" on her W-2, she does not argue in opposition to the motion that this fact renders Justworks her "employer" under the joint employer doctrine, or for purposes of Title VII and/or CADA. Her failure to make any argument along these lines can only constitute recognition that what is relevant are the indicia of control discussed above – not whether the payroll company is listed as the employer on the W-2.[15]

In short, on the allegations of the Amended Complaint, no trier of fact could plausibly infer that Justworks was Paley's employer under CADA, either. Paley's conclusory allegations that Justworks was her joint employer because it handled pay checks, tax forms, retirement and employment benefits, and workers compensation for Bellum are insufficient to establish that Justworks and Bellum "exercise[d] significant control over the same employees." *Covas-Alvarez v. Western Stock Show Ass'n,* No. 09-cv-02140, 2010 WL 3730703, at *3 (D. Colo. Sept. 17, 2010) (finding no employer-employee relationship existed under Title VII and CADA); *see also Virgo v. Riviera Beach Associates, Ltd.,* 30 F.3d 1350, 1360 (11th Cir. 1994) (upholding the lower court's determination that the defendant was plaintiff's joint-employer because "it retained significant

---

[15] It is, however, a curious fact.

authority to control matters at the [worksite]"); *Emerson v. Wembley USA Inc.*, 433 F.Supp 2d. 1200, 1221 (D. Colo. 2006) ("Most important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances."); *Blagg v. Technology Group, Inc.*, 303 F.Supp.2d 1181, 1885 (D. Colo. 2004) ("[C]ontrol is the central issue.").

Because there is no plausible allegation that Justworks employed Paley, all claims against it, whether under federal or state law, must be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Bellum's and Justworks' motions to dismiss Plaintiff's CADA claims – Counts III, IV, and V – for lack of subject matter jurisdiction are GRANTED. Justworks' motion to dismiss Plaintiff's Title VII claims – Counts I and II – as against it is also GRANTED.

The case will proceed on Plaintiff's remaining federal claims against Bellum.

The Clerk of Court is respectfully directed to terminate the motions to dismiss found at Dkt. ## 45 and 48.

This constitutes the decision and order of the court. It is a written decision.

Dated: December 5, 2025

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

31